UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WANDA SIGNAVONG,

                          Plaintiff,

          v.

VOLT MANAGEMENT CORP., et al.,

                          Defendants.

CASE NO. C07-515JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants'[1] motion to compel arbitration (Dkt. # 9).  The court has considered the papers filed in support and opposition to this motion.  For the reasons stated below, the court GRANTS Defendants' motion and STAYS the action.

## II.  BACKGROUND

This action arises out of Plaintiff Wanda Signavong's temporary employment with Defendant Volt Management Corp. ("Volt") on assignment to Volt's customer, Defendant Carlyle, Inc. ("Carlyle").  Upon accepting employment with Volt in October 2004, Ms.

---

[1]Defendant Volt Management Corp. filed the instant motion to compel.  The remaining Defendant, Carlyle Inc., filed a subsequent notice to join the motion (Dkt. # 12).

ORDER – 1

Signavong signed an agreement, which contained the following provision governing dispute resolution:

> any disputes arising out of or relating to the actions of Volt or any assignment or termination of any assignment, including disputes arising out of or related to the actions of Volt's Customers (or Customer's employee), shall be settled by final and binding arbitration, pursuant to the Federal Arbitration Act, in accordance with the rules of the American Arbitration Association in the state where you were employed.  The Arbitrator may award attorney fees and/or costs to the prevailing party.  Judgment upon the arbitration award may be entered in any court having jurisdiction.  Volt and you hereby waive our respective rights to trial by jury of any cause of action or defense that we may have against each other or against any customer of Volt.  This Agreement to Arbitrate disputes does not prevent you from filing a charge or claim with any governmental administrative agency as permitted by applicable law.

Conner Decl., Ex. 1 at 3 ¶ 8 ("Employment Agreement" or "Agreement").[2]

Following termination of her employment, Ms. Signavong filed suit in state court against Defendants Volt and Carlyle, alleging age discrimination, retaliation, and negligent infliction of emotional distress.  Defendants properly removed the action to this court, and now move to compel arbitration.

## III.  ANALYSIS

The Federal Arbitration Act ("FAA") "compels judicial enforcement of a wide range of written arbitration agreements" that involve commerce.  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001).[3]  Arbitration agreements formed in connection with contracts of employment touch on commerce, and thus, are enforceable under the FAA. See id. at 119; see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991)

---

[2]In addition to signing the Employment Agreement, Ms. Signavong signed a document formally acknowledging that she received an Employee Handbook, which contains a nearly identical arbitration provision; that provision differs only in the terms it uses to refer to Volt, its client, and the employee.  See Conner Decl., Ex. 2.

[3]The relevant FAA provision provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

ORDER – 2

1   (holding that Age Discrimination in Employment Act claims are arbitrable); <u>Zuver v.</u>
2   <u>Airtouch Communications</u>, 103 P.3d 753, 769 (Wash. 2004) (affirming order to compel
3   arbitration of state law employment discrimination claims).  Courts resolve doubts on
4   questions of arbitrability in favor of arbitration.  <u>Gilmer</u>, 500 U.S. at 25 (citing <u>Moses H.</u>
5   <u>Cone Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983)).
6   Notwithstanding this presumption, the court may consider generally applicable state law
7   contract defenses (e.g., fraud, unconscionability, duress) in determining whether an
8   arbitration provision is valid.  <u>Zuver</u>, 103 P.3d at 759.  The party opposing arbitration
9   bears the burden of proving such a defense.  <u>Id.</u>
10          At the threshold, the court addresses Ms. Signavong's contention that the
11  Employment Agreement's terms and conditions do not apply to her claims.  Ms.
12  Signavong claims that she "terminated" her employment with Volt under the Employment
13  Agreement on February 25, 2005 (when her first assignment at Carlyle ended), and that
14  when Volt "rehired" her on March 28, 2005 (to return to work at Carlyle), she did not
15  sign a new contract, nor did Volt inform her "that the previous contract was still in
16  effect."  Signavong Decl. ¶ 12.  Based on this one-month gap between assignments, Ms.
17  Signavong appears to contend that the Employment Agreement lapsed.  There is no
18  evidence, however, that Ms. Signavong notified Volt that she intended to terminate her
19  employment, nor that Volt terminated her.  Rather, Ms. Signavong remained eligible for
20  temporary placement after the conclusion of her first assignment at Carlyle, as evidenced
21  by her return to work at Carlyle.  <u>See</u> Conner Reply Decl. ¶ 7 (describing nature of
22  temporary staffing business, stating that "temporary employees are not terminated at the
23  conclusion of an assignment, but rather remain employed by the agency and often placed
24  on other assignments depending on availability.").  Without more, Ms. Signavong's
25  subjective belief that the Agreement expired after her first assignment does not persuade
26  the court to set aside the Agreement.  The court concludes that the Agreement's terms and
27  conditions remained applicable during Ms. Signavong's second assignment at Carlyle.
28

ORDER – 3

Ms. Signavong does not dispute that the scope of the arbitration provision contained in the Employment Agreement encompasses her claims.[4]  She contends, however, that the Agreement is invalid because it is unconscionable.  Washington courts recognize two categories of unconscionability: substantive and procedural.  Zuver, 103 P.3d at 759-60.  Procedural unconscionability is "the lack of meaningful choice, considering all the circumstances surrounding the transaction . . . ."  Id. at 759 (citation omitted).  Substantive unconscionability occurs where a contract provision is so "one-sided or overly harsh" that it is fairly characterized as "exceedingly calloused" or "shocking to the conscience."  Id. (citation omitted).

A.      **Procedural Unconscionability**

The court concludes that the circumstances of Ms. Signavong's execution of the Agreement do not rise to a level of unconscionability.  The court agrees that the Agreement likely constitutes an adhesion contract given that Volt prepared it as a standard form and offered it to Ms. Signavong on a "take it or leave it" basis.  See id. at 760 (describing characteristics of adhesion contracts).  Nonetheless, this conclusion is not dispositive on the question of procedural unconscionability.  Id.  Instead, the key inquiry is whether Ms. Signavong "lacked meaningful choice."  Id.  In making this determination, the court considers the following: whether the important terms of the contract were "hidden in a maze fine print," the "manner in which the contract was entered," and whether Ms. Signavong had a "reasonably opportunity to understand the terms of the contract."  Id. (citations omitted).

Volt did not hide the terms of the arbitration agreement in "a maze of fine print." See id. at 761.  Rather, the one-page contract (the third and final page of the employment

---

[4]Indeed, the arbitration provision provides that "any disputes arising out of or relating to the actions of Volt or any assignment or termination of any assignment, including disputes arising out of or related to the actions of Volt's Customers (or Customer's employee), shall be settled by final and binding arbitration . . . ."  Agreement ¶ 8.

ORDER – 4

application) is clearly labeled, "Employment Agreement" – a title appearing underlined, bolded, and in capital letters.  See Agreement.  The Agreement concludes with the capital-lettered statement appearing immediately above Ms. Signavong's signature: "I have read and agree to the above terms and conditions."  Id.  In particular, the terms of the arbitration provision are in capital-lettered, normal size typeface.  Id. ¶ 8; see Zuver, 103 P.3d at 759. (holding that one-page long arbitration agreement with terms in "normal" size typeface did not support a finding that the agreement was procedurally unconscionable).

Nevertheless, Ms. Signavong contends that she "didn't read the contract." Signavong Decl. ¶ 7.  Here, the court is bound by the maxim that "[o]ne who accepts a written contract is conclusively presumed to know its contents."  Tjart v. Smith Barney, Inc., 28 P.3d 823, 829 (Wash. App. Ct. 2001).  Thus, where a party has signed a contract without reading it, she cannot successfully argue that the contract is unenforceable as long as she was not deprived of the opportunity to read it.  Yakima County Fire Prot. Dist. No. 12 v. City of Yakima, 858 P.2d 245, 255 (Wash. 1993).  Ms. Signavong's contention that Volt deprived her of such an opportunity is unavailing.  Ms. Signavong avers that she was required to fill out her employment application on the date Volt provided it, that she "wasn't allowed to take the contract home," nor "advised that [she] should have someone read it and explain it to [her]."  Signavong Decl. ¶ 10.  Volt disputes Ms. Signavong's account of the circumstances surrounding the parties' execution of the Agreement.  As a matter of policy, Volt does not prohibit job applicants from leaving the premises once they begin to fill out a job application.  Rather, Volt permits applicants to fill out the application online, at Volt's office, or at home.  Conner Reply Decl. ¶¶ 3-5; King Decl. ¶ 7.  Samantha King, a Volt Recruiter, testified that she explained to Ms. Signavong the terms conditions of employment, and answered Ms. Signavong's questions.  King Decl. ¶¶ 4-5.  In any event, Ms. Signavong does not allege that any particular Volt employee pressured her to sign the Agreement within a certain

ORDER – 5

time frame, or that anyone refused to answer her questions.  The court thus concludes that Ms. Signavong's perception that Volt hurried her signature, without more, is insufficient to invalidate the agreement on grounds of procedural unconscionability.  <u>See</u> <u>Tjart</u>, 28 P.3d at 829 (affirming order to compel arbitration even though the employer explained that signing the contract was "a matter of office procedure" and notwithstanding fact that employee reviewed and signed the document "relatively rapidly").

Ms. Signavong's remaining contention – that even if she had read the Agreement, she would not have understood the terms "arbitration" and "any disputes" – also fails to show that she was deprived of a meaningful choice.  <u>See</u> Signavong Decl. ¶ 7.  Ms. Signavong indicates that her understanding of English is limited, as her first language is Lao.  <u>Id.</u> ¶¶ 2, 5.  Ms. Signavong's representations in her employment application, however, do not indicate a lack of ability to understand the terms of the Agreement.  Ms. Signavong filled out the application in English; it contains detailed information about her work history, and includes Ms. Signavong's assertions that she graduated from high school, earned a certificate in mechanical drafting from an American trade school, and attended community college majoring in "math and English."  Conner Decl., Ex. 1. According to Volt Recruiter Ms. King, when she and Ms. Signavong reviewed the employment application, Ms. Signavong communicated in English and did not express an inability to understand English.  King Decl. ¶ 5.  Moreover, the Agreement sets forth the terms of employment in such a way that an average person would understand its substance.  Although Ms. Signavong may not have understood the term "arbitration," the Agreement states: "Volt and you hereby waive our respective rights to trial by jury. . . ." <u>See</u> Agreement ¶ 8.  Ms. Signavong's assertion that she did not understand what she signed is not a sufficient basis for invalidating an otherwise enforceable agreement.  <u>See</u> <u>Tjart</u>, 28 P.3d at 829.

ORDER – 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Substantive Unconscionability**

On substantive grounds, Ms. Signavong contends that the court should invalidate the agreement because the costs of arbitration are prohibitively expensive.  In light of the fact that Defendants have expressed their willingness to pay 100% of the arbitration fees and costs of the arbitrator, the court concludes that Ms. Signavong's argument is moot. See Zuver, 103 P.3d at 762 (finding party's offer to pay arbitrator's fees in full rendered moot any challenge of a fee-splitting provision).[5]  Ms. Signavong also complains that the agreement grants discretion to the arbitrator to award attorneys' fees to the prevailing party, which would, in effect, dissuade her from vindicating her rights.  The Washington Supreme Court directly addressed this argument in Zuver, where it held that it would not assume that an arbitrator would interpret "prevailing party" language in a manner that proscribed enforceability of an arbitration agreement.  Id. at 763-64.  The court found that it was "mere speculation to assume that the arbitrator would disregard case law holding that a prevailing defendant may receive attorney fees only if a plaintiff's discrimination claim was 'frivolous, unreasonable, or without foundation.'"  Id. at 764 (citation omitted). Accordingly, court concludes that the prevailing party provision is not so one-sided or overly harsh as to shock the conscience.

**C.      Volt's Request for Attorneys' Fees**

Lastly, Volt requests an award of attorneys' fees for its preparation of the motion to compel in this matter.  The Ninth Circuit has held that an award of attorneys' fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration.  United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1383 (9th Cir. 1984).  The court finds that the circumstances surrounding Ms.

---

[5]Although Ms. Signavong is required to pay a $150 filing fee to initiate arbitration, it does not appear that this fee will effectively prohibit Ms. Signavong from bringing her claims.  Indeed, this fee is less than the $200 filing fee Ms. Signavong paid to file suit in the King County Superior Court.  See RCW 36.18.020(2)(a).

ORDER – 7

Signavong's refusal to submit this dispute to arbitration do not support such an award.  In opposing Defendants' motion, Ms. Signavong relies on existing law or propounds nonfrivolous arguments for its extension.  Ms. Signavong's testimony that she was initially unaware of her "right to seek arbitration," Signavong Decl. ¶ 13, persuades the court that she has not acted in bad faith.  The court thus denies Volt's request for an award of attorneys' fees.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion to compel arbitration (Dkt. # 9).  The court STAYS this matter pending arbitration of Ms. Signavong's claims in accordance with the parties' arbitration agreement, save for Defendants' obligation to pay the fees and costs of the arbitrator.

Dated this 21st day of June, 2007.


JAMES L. ROBART
United States District Judge

ORDER – 8